UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RANDY A. INMAN | No. 26-cr-75- JL- AJ-02 |

PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the United States of America by its attorney, Erin Creegan, United States Attorney for the District of New Hampshire, and the defendant, Randy A. Inman, and the defendant's attorney, James H. Moir, Esquire, enter into the following Plea Agreement:

1. The Plea and the Offense.

The defendant agrees to waive his right to have this matter presented to a grand jury and plead guilty to Count One of an Information charging him with Conspiracy to Violate the Lacey Act, in violation of 18 U.S.C. § 371 and 16 U.S.C. §§ 3372, 3373.

In exchange for the defendant's guilty plea, the United States agrees to the sentencing stipulations identified in Section 6 of this agreement.

2. The Statute and Elements of the Offense.

Title 18, United States Code, Section 371 provides, in pertinent part:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 371.

The elements of Conspiracy are:

> First, that the agreement specified in the indictment existed between at least two people to violate the Lacey Act;
>
> Second, that the defendant willfully joined the conspiracy; and
>
> Third, that one of the conspirators committed an overt act during the period of the conspiracy in an effort to further the purpose of the conspiracy.

Pattern Criminal Jury Instructions for The First Circuit, 4.18.371(1) (2024).

Here, the object of the conspiracy was to violate the Lacey Act by trafficking illegally killed bobcats and to falsely label them in violation of 16 U.S.C. § 3372(a) and (d). Relevant here, Title 16 United States Code, Section 3372(a) provides that:

> It is unlawful for any person . . . to import, export, transport, sell, receive, acquire, or purchase in interstate or foreign commerce . . . any fish or wildlife taken, possessed, transported, or sold in violation of any law or regulation of any State or in violation of any foreign law . . . .

16 U.S.C. § 3372(a)(2)(A). The elements of Lacey Act Trafficking are:

> First, the defendant transported, sold, received, or acquired in interstate commerce wildlife that was;
>
> Second, taken, possessed, transported, or sold in violation of state law;
>
> Third, the defendant did so knowingly;
>
> Fourth, the defendant's conduct involved the sale, purchase, offer to sell, offer to purchase, intent to sell, or intent to purchase wildlife with a market value over $350;
>
> Fifth, The defendant knew that the wildlife was taken, possessed, transported, or sold in violation of state law.

From The Pattern Criminal Jury Instructions for The First Circuit, 4.16.3372 (2024).

Relevant here, Title 16 United States Code, Section 3372(d) provides that:

> It is unlawful for any person to make or submit any false record, account, or label for, or any false identification of, any fish, wildlife, or plant which has been, or is intended to be (1) imported, exported, transported, sold, purchased, or received

from any foreign country; or (2) transported in interstate or foreign commerce.

16 U.S.C. § 3372(d). The elements of Lacey Act False Labeling are:

First, the defendant knowingly made and submitted a false record and account concerning wildlife;

Second, the wildlife had been, and was intended to be, exported; and

Third, the offense involved the exportation of wildlife in foreign commerce.

From The Ninth Circuit Model Criminal Jury Instructions, 9.14 (2010).

3. Offense Conduct.

The defendant stipulates and agrees that if this case proceeded to trial, the government would introduce evidence of the following facts, which would prove the elements of the offense beyond a reasonable doubt:

The bobcat (*Lynx rufus*) was a wild cat native to North America. In New Hampshire, it was unlawful to take (such as by hunting or trapping) animals except as authorized by law. New Hampshire provides that "[t]here shall be no open season for the taking of bobcat." N.H. Code Admin. R. Fis 303.05. Other states, such as New York and Massachusetts, allow for the hunting and trapping of bobcats.

The United States and 182 other countries are signatories to a multilateral treaty called the Convention on International Trade in Endangered Species of Wild Fauna and Flora, 27 U.S.T. 1087, T.I.A.S. 8249 ("CITES"). CITES provides a mechanism for regulating international trade in species whose survival is considered threatened by trade. Because laws regulating the hunting and trapping of non-endangered wildlife are reserved to the states, each state has a process by which a hunter can obtain CITES tags, also known as seals, to place on covered species. Federal wildlife inspectors will not approve an export permit for CITES-listed

specimens that do not bear the appropriate state CITES tag. Under CITES, an export permit is required for international trade in bobcats or bobcat parts.

Because hunting bobcats is illegal in New Hampshire, New Hampshire does not have an export program for bobcats and does not distribute CITES tags for bobcats. New York, on the other hand, has an export program for bobcats and provides successful trappers or hunters of bobcats CITES tags with serial numbers bearing the prefix "NYB."

Beginning in at least November 2018 and continuing through at least December 2022, the defendant conspired with Sherwood Dubrey Jr. and others to illegally kill bobcats in New Hampshire, then transport them to New York where they were falsely tagged to appear as though they were legally killed in New York, then shipped to Canada to be sold at a fur auction.

Through the investigation, law enforcement obtained text messages between Inman and others, including Dubrey Jr. These messages and other evidence obtained through the investigation demonstrate that for more than four years, Inman and Dubrey Jr. routinely killed bobcats in violation of New Hampshire law. They then transported them to New York to be illegally tagged by Dubrey Sr., falsely claiming the animals had been taken in that state. This made the bobcats appear to have been legally taken when they were not. Having concealed the illegal taking of the bobcats from state and federal authorities, Dubrey Jr. and Inman then had the bobcat skins transported to Wisconsin for ultimate export to a fur auction in Canada.

In their communications, Inamn and Dubrey Jr. acknowledged that it was illegal to hunt and trap bobcats in New Hampshire, and the need to have the pelts tagged in New York. They sometimes used rifles with scopes that could capture videos and photographs of the kills and sent videos of their illegal kills via text messages.

Dubrey Jr. also coordinated the transport of bobcat pelts from New Hampshire to his father, Dubrey Sr., in New York. Inman worked with Dubrey Jr. to transfer the pelts and traveled with him to New York on multiple occasions. Dubrey, Sr. then obtained CITES tags for the bobcats from the New York Department of Environmental Conservation under the false premise that he had legally killed the bobcats in New York. and Dubrey Jr. And Dubrey, Sr. then coordinated the transport of the bobcat skins from New York to Wisconsin, where an intermediary would facilitate the export of the pelts to a fur auction in Canada.

Dubrey Jr. maintained an account at the fur auction house, such that when the skins were sold, including the illegal bobcat skins, the auction house would issue him a check. He then coordinated with Inman to pay him his share of the profit from their illegally killed bobcats.

From 2018 to 2022, Inman and Dubrey Jr. caused the interstate transport and ultimate export of at least 41 bobcats that were illegally taken in New Hampshire, illegally tagged in New York, and fraudulently exported to Canada for sale as putatively legal wildlife. The auction value of this wildlife was approximately $3,000 total.

4. Penalties, Special Assessment and Restitution.

The defendant understands that the penalties for the offense are:

A. A maximum prison term of five years (18 U.S.C. § 371; 16 U.S.C. § 3373(d)(1)(b));

B. A maximum fine of $250,000 (18 U.S.C. §§ 371, 3571);

C. A term of supervised release of not more than three years (18 U.S.C. § 3583). The defendant understands that the defendant's failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring the defendant to serve in prison all or part of the term of supervised release, with no credit for time already spent on supervised release;

D. A mandatory special assessment of $100 for each count of conviction, at or before the time of sentencing (18 U.S.C. § 3013(a)(2)(A)); and

E. In addition to the other penalties provided by law, the Court may order the defendant to pay restitution to the victim(s) of the offense (18 U.S.C. § 3663 or § 3663A).

To facilitate the payment and collection of any restitution that may be ordered, the defendant agrees that, upon request, he will provide the United States with a financial disclosure statement and supporting financial documentation.

The defendant further agrees that, if restitution is ordered, it shall be due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. If the Court imposes a schedule of payments, the defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full, including, but not limited to, the Treasury Offset Program.

5. Sentencing and Application of the Sentencing Guidelines.

The defendant understands that the Sentencing Reform Act of 1984 applies in this case and that the Court is required to consider the United States Sentencing Guidelines as advisory guidelines. The defendant further understands that he has no right to withdraw from this Plea Agreement if the applicable advisory guideline range or his sentence is other than he anticipated.

The defendant also understands that the United States and the United States Probation Office shall:

A. Advise the Court of any additional, relevant facts that are presently known or may subsequently come to their attention;

B. Respond to questions from the Court;

C. Correct any inaccuracies in the pre-sentence report;

D. Respond to any statements made by him or his counsel to a probation officer or to the Court.

The defendant understands that the United States and the Probation Office may address

the Court with respect to an appropriate sentence to be imposed in this case.

The defendant acknowledges that any estimate of the probable sentence or the probable sentencing range under the advisory Sentencing Guidelines that he may have received from any source is only a prediction and not a promise as to the actual sentencing range under the advisory Sentencing Guidelines that the Court will adopt.

6. Sentencing Stipulations and Agreements.

Pursuant to Fed. R. Crim. 11(c)(1)(B), the United States and the defendant stipulate and agree to the following:

(a) The United States will recommend that the defendant be sentenced within the applicable advisory sentencing guidelines range as determined by the Court;

(b) The defendant shall pay restitution to the State of New Hampshire of at least $20,500, consisting of $500 per illegally killed bobcat. *See* N.H. Rev. Stat. 207:55(I)(F). This shall be a joint and several obligation with his co-conspirator, Sherwood Dubrey Jr.

The defendant understands that the Court is not bound by the foregoing agreements and, with the aid of a pre-sentence report, the Court will determine the facts relevant to sentencing. The defendant also understands that if the Court does not accept any or all of those agreements, such rejection by the Court will not be a basis for the defendant to withdraw his guilty plea.

The defendant understands and agrees that the United States may argue that other sentencing enhancements should be applied in determining the advisory guideline range in this case, and he is permitted to object to them.

The United States and the defendant are free to make recommendations with respect to the terms of imprisonment, fines, conditions of probation or supervised release, and any other penalties, requirements, and conditions of sentencing as each party may deem lawful and appropriate, unless such recommendations are inconsistent with the terms of this Plea Agreement.

7. Acceptance of Responsibility.

The United States agrees that it will not oppose an appropriate reduction in the defendant's adjusted offense level, under the advisory Sentencing Guidelines, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the offense. The United States, however, may oppose any adjustment for acceptance of responsibility if the defendant:

A. Fails to admit a complete factual basis for the plea at the time he is sentenced or at any other time;

B. Challenges the United States' offer of proof at any time after the plea is entered;

C. Denies involvement in the offense;

D. Gives conflicting statements about that involvement or is untruthful with the Court, the United States or the Probation Office;

E. Fails to give complete and accurate information about his financial status to the Probation Office;

F. Obstructs or attempts to obstruct justice, prior to sentencing;

G. Has engaged in conduct prior to signing this Plea Agreement which reasonably could be viewed as obstruction or an attempt to obstruct justice, and has failed to fully disclose such conduct to the United States prior to signing this Plea Agreement;

H. Fails to appear in court as required;

I. After signing this Plea Agreement, engages in additional criminal conduct; or

J. Attempts to withdraw his guilty plea.

The defendant understands and agrees that he may not withdraw his guilty plea if, for any of the reasons listed above, the United States does not recommend that he receive a reduction in his sentence for acceptance of responsibility.

The defendant also understands and agrees that the Court is not required to reduce the offense level if it finds that he has not accepted responsibility.

If the defendant's offense level is sixteen or greater, and he has assisted the United States in the investigation or prosecution of his own misconduct by timely notifying the United States of his intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently, the United States will move, at or before sentencing, to decrease the defendant's base offense level by an additional one level pursuant to U.S.S.G. § 3E1.1(b).

8. Waiver of Trial Rights and Consequences of Plea.

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him. The defendant also understands that he has the right:

A. To plead not guilty or to maintain that plea if it has already been made;

B. To be tried by a jury and, at that trial, to the assistance of counsel;

C. To confront and cross-examine witnesses;

D. Not to be compelled to provide testimony that may incriminate him; and

E. To compulsory process for the attendance of witnesses to testify in his defense.

The defendant understands and agrees that by pleading guilty he waives and gives up the foregoing rights and that upon the Court's acceptance of his guilty plea, he will not be entitled to a trial.

The defendant understands that if he pleads guilty, the Court may ask him questions about the offense, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers will be used against him in a prosecution for perjury or making false statements.

9. Acknowledgment of Guilt; Voluntariness of Plea.

The defendant understands and acknowledges that he:

A. Is entering into this Plea Agreement and is pleading guilty freely and voluntarily because he is guilty;

B. Is entering into this Plea Agreement without reliance upon any promise or benefit of any kind except as set forth in this Plea Agreement or revealed to the Court;

C. Is entering into this Plea Agreement without threats, force, intimidation, or coercion;

D. Understands the nature of the offense to which he is pleading guilty, including the penalties provided by law; and

E. Is completely satisfied with the representation and advice received from his undersigned attorney.

10. Scope of Agreement.

The defendant acknowledges and understands that this Plea Agreement binds only the undersigned parties and cannot bind any other non-party federal, state or local authority. The defendant also acknowledges that no representations have been made to him about any civil or administrative consequences that may result from his guilty plea. The defendant further

acknowledges that this Plea Agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving the defendant.

11. Collateral Consequences.

The defendant understands that as a consequence of his guilty plea he will be adjudicated guilty and may thereby be deprived of certain federal benefits and certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms.

The defendant understands that, if he is not a citizen of the United States, his guilty plea to the charged offense will likely result in him being subject to immigration proceedings and removed from the United States by making him deportable, excludable, or inadmissible. The defendant also understands that if he is a naturalized citizen, his guilty plea may result in ending his naturalization, which would likely subject him to immigration proceedings and possible removal from the United States. The defendant understands that the immigration consequences of this plea will be imposed in a separate proceeding before the immigration authorities. The defendant wants and agrees to plead guilty to the charged offense regardless of any immigration consequences of this plea, even if this plea will cause his removal from the United States. The defendant understands that he is bound by his guilty plea regardless of any immigration consequences of the plea. Accordingly, the defendant waives any and all challenges to his guilty plea and to his sentence based on any immigration consequences and agrees not to seek to withdraw his guilty plea, or to file a direct appeal or any kind of collateral attack challenging his guilty plea, conviction, or sentence, based on any immigration consequences of his guilty plea.

12. Satisfaction of Federal Criminal Liability; Breach.

The defendant's guilty plea, if accepted by the Court, will satisfy his federal criminal

liability in the District of New Hampshire arising from his participation in the conduct that forms the basis of the information in this case.

The defendant understands and agrees that, if after entering this Agreement, he fails specifically to perform or fulfill completely each one of his obligations under this Agreement, fails to appear for sentencing, or engages in any criminal activity prior to sentencing, he will have breached this Agreement.

If the United States, in its sole discretion, and acting in good faith, determines that the defendant committed or attempted to commit any further crimes, failed to appear for sentencing, or has otherwise violated any provision of this Agreement, the United States will be released from its obligations under this Agreement, including, but not limited to, any agreement it made to dismiss charges, forbear prosecution of other crimes, or recommend a specific sentence or a sentence within a specified range. The defendant also understands that he may not use his breach of this Agreement as a reason to withdraw his guilty plea or as a basis to be released from his guilty plea.

13. Waivers.

A. Appeal.

The defendant understands that he has the right to challenge his guilty plea and/or sentence on direct appeal. By entering into this Plea Agreement the defendant knowingly and voluntarily waives his right to challenge on direct appeal:

1. His guilty plea and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues, or claims challenging the constitutionality of the statute of conviction; and

2. The sentence imposed by the Court if it is within, or lower than, the

guideline range determined by the Court, or if it is imposed pursuant to a minimum mandatory sentence.

The defendant's waiver of his rights does not operate to waive an appeal based upon new legal principles enunciated in Supreme Court or First Circuit case law after the date of this Plea Agreement that have retroactive effect; or on the ground of ineffective assistance of counsel.

B. Collateral Review

The defendant understands that he may have the right to challenge his guilty plea and/or sentence on collateral review, e.g., a motion pursuant to 28 U.S.C. §§ 2241 or 2255. By entering into this Plea Agreement, the defendant knowingly and voluntarily waives his right to collaterally challenge:

1. His guilty plea, except as provided below, and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues, or claims challenging the constitutionality of the statute of conviction; and

2. The sentence imposed by the Court if it is within, or lower than, the guideline range determined by the Court, or if it is imposed pursuant to a minimum mandatory sentence.

The defendant's waiver of his right to collateral review does not operate to waive a collateral challenge to his guilty plea on the ground that it was involuntary or unknowing, or on the ground of ineffective assistance of counsel. The defendant's waiver of his right to collateral review also does not operate to waive a collateral challenge based on new legal principles enunciated by in Supreme Court or First Circuit case law decided after the date of this Plea Agreement that have retroactive effect.

C. Freedom of Information and Privacy Acts

The defendant hereby waives all rights, whether asserted directly or through a

representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of the case(s) underlying this Plea Agreement, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. §552, or the Privacy Act of 1974, 5 U.S.C. §522a.

D. Appeal by the Government

Nothing in this Plea Agreement shall operate to waive the rights or obligations of the Government pursuant 18 U.S.C. § 3742(b) to pursue an appeal as authorized by law.

14. No Other Promises.

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement or revealed to the Court, and none will be entered into unless set forth in writing, signed by all parties, and submitted to the Court.

15. Final Binding Agreement.

None of the terms of this Plea Agreement shall be binding on the United States until this Plea Agreement is signed by the defendant and the defendant's attorney and until it is signed by the United States Attorney for the District of New Hampshire, or an Assistant United States Attorney.

16. Agreement Provisions Not Severable.

The United States and the defendant understand and agree that if any provision of this Plea Agreement is deemed invalid or unenforceable, then the entire Plea Agreement is null and void and no part of it may be enforced.

ERIN CREEGAN
United States Attorney

Date: 9/15/2026

By: ______________________
Matthew T. Hunter
Assistant United States Attorney
53 Pleasant St., 4th Floor
Concord, NH 03301
Matthew.Hunter@usdoj.gov

The defendant, Randy A. Inman, certifies that he has read this 15-page Plea Agreement and that he fully understands and accepts its terms.

Date: 9/11/26

______________________
Randy A. Inman, Defendant

I have read and explained this 15-page Plea Agreement to the defendant, and he has advised me that he understands and accepts its terms.

Date: 9/14/2026

______________________
James H. Moir, Esquire
Attorney for Randy A. Inman